UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROCKY VAIL,

Plaintiff,

v.

THE TOWN OF CAYUTA, et al.,

Defendants.

Case # 20-CV-6917-FPG

DECISION AND ORDER

## INTRODUCTION

This case involves a dispute between an individual, Rocky Vail ("Plaintiff"), and his prior employer, including the Town of Cayuta (the "Town"), Thomas J. Beach, individually and in his capacity as the Town of Cayuta Superintendent of Highways ("Beach"), and Brandon K. Theetge, individually and in his capacity as the Town of Cayuta Supervisor ("Theetge") (collectively, "Defendants"), alleging three claims for (1) violation of his First Amendment right to freedom of expression, pursuant to 42 U.S.C. § 1983; (2) violation of his First Amendment right of freedom of speech and affiliation, pursuant to 42 U.S.C. § 1983; and (3) trespass to chattels. ECF No. 1.[1]

Defendants filed a motion to dismiss all of Plaintiff's claims on the grounds that Plaintiff failed to state a claim and that Beach and Theetge are entitled to qualified immunity. ECF No. 4. For the reasons that follow, Defendants' motion is DENIED.

[1] The Court notes that Plaintiff also raises free speech claims under the New York State Constitution. However, neither party raises these claims in their briefings. As such, the Court will not discuss the state constitutional claims.

## BACKGROUND[2]

Plaintiff was employed to work for the Town as the Highway Machine Equipment Operator ("MEO") on or about May 29, 2018. ECF No. 1. ¶ 9. For the entirety of Plaintiff's employment as MEO, Beach was his supervisor. *Id.* ¶ 10.

In October 2019, Plaintiff announced that he was running against Beach, the incumbent, for the elected position of the Town of Cayuta Superintendent of Highways. *Id.* ¶ 14. During Plaintiff's candidacy, he placed home-drawn campaign signs around the Town. *Id.* ¶ 15. Soon thereafter, Plaintiff noticed that his campaign signs were being removed. *Id.* ¶ 16. He contacted the Sheriff's Office and was advised to set up "game cameras," which would take photographs continuously during sensed motion, in an attempt to photograph the person removing the signs. *Id.*

On October 23, 2019, after installing the cameras, Plaintiff noticed that a sign had been removed from its location. *Id.* ¶ 18. In reviewing the photographs from the camera, Plaintiff discovered that it was Beach who had removed the sign. *Id.* Plaintiff later questioned Beach, but he denied having done so. *Id.* ¶ 19. On October 30, 2019, Plaintiff was interviewed by WETM News. During the interview, Plaintiff explained that his campaign signs for Superintendent of Highways were being removed and that cameras placed near the signs showed that it was Beach—the opposing candidate—who had removed the signs. *Id.* ¶ 21, 24. He also stated in the interview that he would be disappointed if Beach were the kind of person that the Town elected as he was someone who demonstrated that he was "willing to cheat to win." *Id.* ¶ 24. Following the television interview, Theetge contacted Plaintiff and advised that there had been election tampering and placed Plaintiff on leave from his employment until the election was over. *Id.* ¶ 25.

[2] The following allegations are taken from Plaintiff's Complaint (ECF No. 1) and are accepted as true for the purpose of evaluating the motion to dismiss.

Beach ultimately won the election and remained the Town's Superintendent of Highways. *Id.* ¶ 27. Following the election, on November 7, 2019, Beach contacted Plaintiff and requested that he report back to work and bring his uniform so that it could be washed. *Id.* ¶ 28. When Plaintiff arrived at work, he was advised by Beach and Theetge that it was decided at a Town meeting that "it was in the best interests of the Town to terminate [Plaintiff] from the MEO position." *Id.* ¶ 29. Following his termination, Plaintiff applied for unemployment and was informed that he was not entitled to such benefits because he was "charged with misconduct, insubordination, and the creation of a 'hostile work environment.'" *Id.* ¶ 32.

Plaintiff believes that the Town wrongfully terminated his employment in retaliation for the content of his news interview. *Id.* ¶ 35. As such, Plaintiff commenced this action. *See generally id.*

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct. *Id.* In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citations and quotations omitted).

The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. 679.

**DISCUSSION**

Defendants move to dismiss the complaint, arguing that (1) the complaint fails to state a claim because Plaintiff's speech was not protected by the First Amendment; (2) Beach and Theetge were not personally involved in the termination and nevertheless are entitled to qualified immunity; and (3) the Court would lack jurisdiction over the trespass to chattels claim if the Court dismisses the first two claims and regardless, the claims do not share a common nucleus of operative fact.

## I. WETM News Video

Plaintiff references the WETM News Video throughout the Complaint and provides the link at which the video may be accessed. ECF No. 1 at ¶ 21. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudication of such a motion may review only a narrow universe of materials. Generally, [a court does] not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (modified). A document is incorporated in the complaint if the complaint expressly refers to it, *see id.*, and is considered integral "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

The WETM News Video clearly satisfies this standard. The Complaint not only expressly references and quotes language from the video, *see* ECF No. 1 at ¶ 21, 24, but the focus of the Complaint is a discussion of the video and the speech contained therein, *see id.* at 22-26. *See, e.g.*, *Thibault v. Spino*, 431 F. Supp. 3d 1, 6-7 (D. Conn. 2019) (considering, *inter alia*, a Facebook post that was the focus of the underlying free speech claim in rendering a decision on a motion to dismiss). As such, the Court will consider the video interview in evaluating Defendants' motion to dismiss (the Court will refer to the video as the "WETM News Video").

**II. Plaintiff's Speech Claim**

The Supreme Court's decision *Pickering v. Board of Education*, 391 U.S. 563 (1968), provides public employees some protection from adverse action being taken against them due to their speech. Specifically, the Court has determined that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citing *Pickering*, 391 U.S. at 568; *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Rankin v. McPherson*, 483 U.S. 378, 384 (1987); *United States v. Treasury Employees*, 513 U.S. 454, 466 (1995)).

*Pickering* and its progeny identify two inquiries to guide the interpretation of the protections accorded to public employee speech. First, it must be determined whether the employee spoke as a citizen on a matter of public concern. *Pickering*, 391 U.S. at 568. If the answer is no, then there is no First Amendment cause of action based on the employer's reaction. *Connick*, 461 U.S. at 147. If the answer is yes, then a First Amendment claim may arise, and the question becomes "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418 (citing *Pickering* 391 U.S. at 568).

The Supreme Court has defined a "matter of public concern" as one that "relat[es] to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999) (collecting cases). In making such a determination, courts should "focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis*, 165 F.3d at 163-64 (citations omitted). However, while the speaker's motive is critical in considering whether the speech addresses a matter of public concern, the Second Circuit has made clear that motive is *not* a dispositive issue. *Cioffi v. Averill Park Central Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 165-66 (2d Cir. 2006) ("[A]lthough the speaker's overall motivation was personal, that fact was not dispositive. If it were, then the Supreme Court's direction that we examine the content, form, and context of a given statement to determine whether it addresses a matter of public concern would be stripped of its meaning and purpose." (footnote omitted)).

Here, the speech at issue is an interview Plaintiff participated in for a local news outlet, WETM News, wherein he discusses his missing campaign signs and his belief, based on photographs taken at the location, that Beach was behind the sign removal. *See* ECF No. 1. Plaintiff argues that this is a matter of public concern because Beach's alleged actions "bear directly on his character as an elected public official," who was seeking re-election at the relevant time, and Plaintiff's interview brought such conduct to light. ECF No. 7-2 at 7. Specifically, Plaintiff claims that in substance, his interview expressed concern that Defendant Beach was "willing to cheat to win." *Id.* Indeed, in the interview Plaintiff indicated that he felt it would be

"sad" if someone who was participating in the "nonsense" of removing campaign signs prior to an election was ultimately elected to a Town position. *See* WETM News Video.

While Plaintiff's interview may have been partially motivated by his personal angst over the situation, the Second Circuit has made clear that "it does not follow that a person *motivated* by a personal grievance cannot be speaking on a matter of public concern." *Sousa v. Roque*, 578 F.3d 164, 174 (2d Cir. 2009). As noted above, motive is not a dispositive inquiry. *See, e.g.*, *Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006). In fact, "'speech on a purely private matter,' [is that] closely tethered to an individual employee's conditions of employment." *Golodner v. Berliner*, 770 F.3d 196, 204 (2d Cir. 2014) (quoting *Lewis*, 165 F.3d at 164; internal citation omitted). That is simply not the case here. Plaintiff is not using the issue of stolen signs to seek changes in the workplace. Rather, on the whole, Plaintiff's interview can be fairly characterized as constituting speech on a matter of public concern as the interview focused on the fact that it was Plaintiff's opposing candidate—Beach—who allegedly was removing the signs. Such actions reflect on the character and fitness of a candidate seeking re-election to local office. It simply cannot be said that a candidate's character and conduct during an election is not a clear matter of public concern. *See, e.g.*, *Thibault*, 431 F. Supp. 3d at 10-11 (finding plaintiff's Facebook post regarding a candidate for a local school board position's children's behavior as bullies to be a matter of public concern given the reflection on the character of the candidate). Indeed, the Supreme Court has made clear that a discussion of a candidate's "character and . . . fitness" for office is at the heart of the First Amendment, even when it contains "more suggestions and arguments than facts." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 325 (2010).

Moreover, Plaintiff's conduct *prior* to the interview demonstrates that the interview was not simply a matter of personal grievance. Plaintiff alleges that after reviewing the photographs

he approached Defendant Beach and asked why he removed Plaintiff's campaign signs. ECF No. 1 at ¶ 19. Defendant Beach denied doing so. *Id.* Thereafter, Plaintiff alleges that the two worked together without incident. *Id.* at ¶ 20. Thus, it seems that Plaintiff addressed his personal grievance directly with Defendant Beach after becoming privy to such information and thereafter, continued with a normal employment relationship without issue.

Defendants' arguments to the contrary fail. First, relying on the Second Circuit's decisions in *Ruotolo v. City of N.Y.*, 514 F.3d 184 (2d Cir. 2008) and *Singer v. Ferro*, 711 F.3d 334 (2d Cir. 2013), Defendants claim that the consequences suffered and damages sought are entirely personal to Plaintiff and therefore, Plaintiff was clearly not speaking on a matter of public concern but airing a personal grievance. *See* ECF No. 4-1 at 6-8. Indeed, Plaintiff seeks damages for "loss of earnings, loss of earnings ability, other economic loss, loss of reputation, loss of dignity, loss of constitutional rights, pain, suffering, embarrassment, humiliation, mental anguish and other non-economic loss." ECF No. 1 at ¶ 42, 53. In addition, he seeks punitive damages on the free speech claims, "actual and compensatory damages" for the destruction of his property, and punitive damages for the same. *Id.* at ¶ 44, 55, 61, 62. However, Plaintiff's Complaint also seeks "exemplary and punitive damages," presumably, to ensure the alleged conduct does not occur during a local election or campaign again.

While it is true that like in *Ruotolo v. City of N.Y.*, 514 F.3d 184 (2d Cir. 2008), Plaintiff's claimed adverse retaliatory consequences here were directed solely at him and he seeks relief that is "almost entirely personal to [him]," *id.* at 190, the underlying circumstances are inherently different. In *Ruotolo*, the plaintiff's suit revolved around a report that plaintiff was assigned to create as part of his job. *See id.* at 186. He claimed that after writing the report, he faced backlash and attributed the conduct to a "custom and practice of tolerance of the violation of [whistle-

blowers'] rights." *Id.* at 187 (modification in original). The Court indicated that this "arguably hint[ed] at some broader public purpose," but concluded that it was essentially a personal grievance for the career-related backlash he suffered. *Id.* at 190. On the contrary, Plaintiff's assertions here do not simply hint at what may be a broader public purpose but directly relate to the character and fitness of an individual running for a town position—a clear matter of public concern which may have an immediate impact on the voting public.

Similarly, in *Singer v. Ferro*, 711 F.3d 334 (2d Cir. 2013), while the Court recognized that allegations of government corruption were "plainly a potential topic of public concern," the Court indicated that the corrupt practices referred to by plaintiff in his complaint were "at best marginal 'public interest,'" and therefore determined that plaintiff was not speaking on a matter of public concern. *Id.* at 340-41. However, in *Singer*, the alleged corrupt practices involved employment-related matters, such as payroll discrepancies, promotions, and discipline. *Id.* at 340. That is simply not the case here. Rather, while Plaintiff's interview involved underlying circumstances which may have ultimately led to Plaintiff's personal employment, the focus of the television interview was on the alleged improper conduct of a candidate running for re-election to a position for the Town. That is a manner plainly of public concern, as such conduct goes to the character and fitness of an official whom the Town was soon voting to re-elect. *See, e.g.*, *Johnson v. Ganim*, 342 F.2d 105, 114 (2d Cir. 2003) (finding speech to be of public concern where though the letter at issue involved heavily personal matters, the court determined that the thrust of the speech involved "the voting public as a whole," and was therefore subject to the First Amendment).

In construing all facts in a light most favorable to the Plaintiff, Plaintiff's complaint sufficiently asserts a First Amendment retaliation claim for purposes of surviving a motion to dismiss. Therefore, the claims will not be dismissed on this ground.[3]

## III. Beach and Theetge's Involvement

Defendants contend that Beach and Theetge cannot be held liable because Plaintiff did not plead any personal involvement by either individual in his termination, and even assuming Plaintiff did establish personal involvement, Beach and Theetge are entitled to qualified immunity. The Court finds that Plaintiff sufficiently alleged personal involvement of Beach and Theetge, and dismissal on the basis of qualified immunity is improper.

Courts within this Circuit recognize that personal involvement in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)) (additional citations omitted). "Personal involvement can be shown by evidence that the defendant 'participated directly in the alleged constitutional violation'; or that the defendant acted in a supervisory capacity by creating a policy or custom under which violations occurred. . . ." *Anderson v. City of N.Y.*, 817 F. Supp. 2d 77, 93 (E.D.N.Y. 2011) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). When a plaintiff asserts wrongful termination pursuant to the First Amendment, claims that defendants participated in general discussions concerning employment and claims that defendants received notice of decisions of employment are insufficient to establish

---

[3] Defendant also asserts that in the event the Court finds that Plaintiff's speech addressed a matter of public concern, dismissal is still warranted because the governmental employer may "retaliate" against an employee under certain circumstances. *See* ECF No. 8 at 3 n. 2. While this is true, courts in this Circuit routinely find that it is inappropriate to resolve this *Pickering* balancing analysis on a motion to dismiss. *See Gala v. City of N.Y.*, No. 20-cv-5549 (BMC), 2021 WL 930252, at *4 (E.D.N.Y. Mar. 11, 2021) (collecting cases). Indeed, in order to make such a determination, the Defendants would bear the "burden of showing that despite First Amendment rights the employee's speech so threatened the government's effective operation that discipline of the employee [wa]s justified." *Melzer v. Bd. of Educ.*, 336 F.3d 185, 193 (2d Cir. 2003). The Court simply cannot make that determination on the record at this stage of the proceeding.

personal liability in the actual decision to terminate a plaintiff. *See, e.g.*, *Schallop v. New York State Dept. of Law*, 20 F. Supp. 2d 384, 392-93 (N.D.N.Y. 1998) (granting summary judgment as to two defendants whose personal involvement in the actual decision to terminate the plaintiff could not be established); *Fry v. McCall*, 945 F. Supp. 655, 661 (S.D.N.Y. 1996) (personal involvement established where a complaint stated that *all* defendants participated in the dismissal of plaintiff); *see also Washpon v. Parr*, 561 F. Supp. 2d 394, 410 (S.D.N.Y. 2008) (finding a named defendant personally involved where the complaint alleged that all "defendants" handcuffed plaintiff and she stated in her deposition that all three defendants handcuffed her).

In regard to Plaintiff's termination, Plaintiff alleges that Beach and Theetge, two high-level officials of the Town, informed Plaintiff that they had "convened a meeting and had decided it was in the best interests of the Town to terminate [him] from the MEO position." ECF No. 1 ¶ 29. Plaintiff alleges that an executive session of the Town Board was held, and the Town authorized the termination. *Id.* ¶ 30-31. Read liberally, Plaintiff asserts that Beach and Theetge were intimately involved in his termination, including by convening a meeting to discuss the termination with the Town board and their feeling that it was in the best interest of the Town to do so—suggesting that the board was seeking to cover up for the reason Beach and Theetge wanted him terminated as they cited workplace misconduct and the creation of a hostile work environment. *Id.* ¶ 32. Plaintiff also asserts that Theetge placed him on leave during the election period and Beach requested Plaintiff return to work to "wash his clothes," prior to informing him of his termination. *Id.* ¶ 25, 27-29. Thus, Plaintiff has sufficiently alleged Beach and Theetge's personal involvement in the termination here.

Nevertheless, Defendants claim that Beach and Theetge are entitled to qualified immunity because "the deprivation of Plaintiff's constitutional rights, if any, was not 'clearly established.'"

ECF No. 4-1 at 11. "Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a right was clearly established the Court considers: (1) whether the right was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and circuit court support the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that the acts were unlawful. *Id.* Qualified immunity also protects an official if it was "objectively reasonable" for him at the time of the alleged misconduct to believe such conduct was lawful. *Id.* at 169-70.

However, a court must "accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, including both those that support the claim and those that defeat the immunity defense." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (internal quotation marks omitted). Here, Defendants argue that it was objectively reasonable to terminate Plaintiff after he failed to report to work following the election. ECF No. 4-1 at 12. Specifically, because it was reasonable for Beach and Theetge to believe due to Plaintiff's absence following the election—during which, Plaintiff was placed on leave—that there was such a breakdown in communication that a breakdown in governmental functioning was likely to persist. *Id.* The Court disagrees.

While Plaintiff has sufficiently set forth a claim insofar as he was speaking on a matter of public concern, there still remains the question of whether the Defendants' conduct was nevertheless proper pursuant to the *Pickering* analysis. *See Garcetti*, 547 U.S. at 418 (even where a plaintiff was speaking on a matter of public concern, the court must determine "whether the

relevant government entity had an adequate justification for treating the employee differently from any other member of the general public," before making a determination on the constitutional violation (citing *Pickering* 391 U.S. at 568)). Under the *Pickering* framework, "[a] government employer may take an adverse employment action against a public employee for speech on matters of public concern if: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption." *Ganim*, 342 F.3d at 114.

The Complaint does not unequivocally require a conclusion that it was objectively reasonable for Defendants to believe their actions were lawful under the *Pickering* balancing test. Plaintiff asserts that there were no issues within the workplace immediately after the alleged signage removal and confrontation between himself and Beach. ECF No. 1 ¶ 19-20. In fact, Plaintiff states that he was placed on leave due to allege election tampering, not for any issues of job performance or workplace disruption. *Id.* ¶ 25. No matter, Defendants ask the Court to conclude that Plaintiff's alleged failure to appear at work following the election provided them a reasonable belief that a breakdown in workplace communication was occurring and that a breakdown in functioning was likely to persist. ECF No. 4-1 at 12. The Court cannot make such a leap at this stage. Nor can the Court conclude that the termination was supported by proper motive, especially taking into account Plaintiff's suspension due to "election tampering," rather than any issues within the workplace, and Beach's false request to return to work to wash a uniform. Because it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," Defendants' motion to dismiss on the basis

of qualified immunity must be denied. *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992).

**IV. Plaintiff's Trespass to Chattel Claim**

Defendants argue that if the Court dismisses the causes of action under 42 U.S.C. § 1983, it may also dismiss the cause of action for trespass to chattels due to a lack of jurisdiction. Indeed, the bases under which this Court has jurisdiction over Plaintiff's free speech claims—28 U.S.C. §§ 1331 and 1343—do not apply to Plaintiff's trespass claim. Rather, the Court has jurisdiction over the claim pursuant to 28 U.S.C. § 1367, which provides the Court with jurisdiction over claims that are related to the claims with original jurisdiction. Because the Court is not dismissing Plaintiff's First Amendment claims, it maintains supplemental jurisdiction over Plaintiff's trespass to chattel claim.

Defendants assert that even if the Court denies the motion to dismiss on the First Amendment grounds, the trespass to chattels claim should be dismissed as it does not rise out of the same "nucleus of operative fact" as the federal claims for purposes of supplemental jurisdiction. *See* ECF No. 4-1 at 13. Specifically, Defendants state that although the federal claims "derive from the alleged interference with [Plaintiff's] personal property . . . the interference is so attenuated from the federal constitutional violation alleged as to render it a completely distinct injury." *Id.*

"[D]isputes are part of the 'same case or controversy' within § 1367 when they 'derive from common nucleus of operative fact.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991)); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab.*, 613 F. Supp. 2d 437, 440-41 (S.D.N.Y. 2009) (quoting *Achtman*, 646 F.3d 15 335) ("Federal and state claims form

'one case or controversy,' and thus satisfy section 1367(a), if they 'derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding.'"). Therefore, supplemental jurisdiction has been exercised "where the facts underlying the federal and state claims substantially overlap or where presentation of the federal claim necessarily brings the facts underlying the state claim before the court." *McConnell v. Costigan*, No. 00 Civ. 4598(SAS), 2000 WL 1716273, at *4 (S.D.N.Y. Nov. 16, 2000) (quotations and alterations omitted). However, supplemental jurisdiction should not be exercised "when the federal and state claims rest[] on essentially unrelated facts." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

Here, Plaintiff's underlying federal claims involve alleged retaliation based on speech to the media. Specifically, the speech at issue is the interview Plaintiff participated in with WETM News regarding the stolen campaign signs and Beach's participation in such conduct as a candidate running for the same local position. Thus, the presentation of necessary facts will include, *inter alia*, Beach's position with the Town, the participation in the election, the alleged sign removal, and events thereafter regarding Plaintiff's employment. Plaintiff's trespass to chattel claim will involve establishing Beach's: (1) intent (2) to physically interfere with (3) Plaintiff's possession (4) resulting in harm. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 258 (S.D.N.Y. 2012) (internal citation omitted). Necessarily, that will require a presentation of evidence that will include, *inter alia*, Beach's participation in the election and the alleged sign removal.

The evidence that will necessarily be presented for each claim clearly overlap and rest on related facts. Indeed, the focus of each claim is the alleged signage removal by Beach. Therefore, the Court will continue to exercise supplemental jurisdiction over the trespass to chattel claim as it is appropriate under the circumstances. *See, e.g.*, *Lussier*, 211 F.3d at 704-05 (2d Cir. 2000)

(reversing a court's exercise of jurisdiction where the federal claim did not require the same evidence as that required for the state law claim); *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1033 (2d Cir. 1979) (reversing a court's exercise of jurisdiction where the federal claim rested on events prior to a contract effective date while the state claim rested only on events occurring after that date).

**CONCLUSION**

Therefore, for the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 4, is DENIED.

IT IS SO ORDERED.

Dated: May 5, 2021
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court